MILK CONTROL BOARD OF THE STATE OF INDIANA
v. CRESCENT CREAMERY, INC. ET AL.

[No. 26,898. Filed April 27, 1938. Rehearing denied May 31, 1938.]

*Omer S. Jackson,* Attorney-General, *Joseph W. Hutchinson,* Deputy Attorney-General, *Eggeman, Reed & Cleland,* and *Charles G. Dailey,* for appellant.

*W. H. Eichhorn, Frank W. Gordon,* and *John H. Edris,* for appellee.

FANSLER, J.—Appellees Crescent Creamery, Inc., and Associated Dairies Company, Inc., brought this action against the appellant and the remaining appellees, seeking to enjoin the enforcement of an order of the appellant requiring the plaintiffs to pay certain money into an equalization pool. It is the theory of the plaintiffs that there is no authority in the Milk Control

Law for requiring distributors to pay into an equalization fund or to permit withdrawals from an equalization fund, and that if the law authorizes such an order it contravenes the provisions of the Fourteenth Amendment to the Federal Constitution and section 21 of the Indiana Bill of Rights. This is upon the theory that the regulation complained of takes the property of the plaintiffs, without due process of law and without just compensation, for the benefit of other private citizens or corporations. There was a judgment enjoining the enforcement of the rules of the Milk Control Board in so far as they provide for the collection of money from the plaintiffs to be paid to other distributors, and perpetually enjoining the defendants from denying the plaintiffs a license on account of their failure to pay into the equalization fund.

Error is predicated upon the overruling of a demurrer, upon the conclusions of law, and upon the overruling of a motion for a new trial.

The sole question involved is more readily approached from the standpoint of the contentions of the appellees, who were plaintiffs below. It is expressly stated in their brief that they do not challenge the constitutionality of the Milk Control Law or the decision in the case of *Albert et al.* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 200 N. E. 688, as to any questions that were at issue in that case. It is expressly stated that the appellees do not challenge the authority of the Milk Control Board to fix the price which shall be paid by distributors and milk dealers to producers, and the price which distributors and milk dealers are permitted to charge consumers; that the board has power to fix a flat price, limited only by the requirement that it be just and reasonable, and that, from time to time, or from month to month, the price may be changed; that different prices may be fixed in different areas in the

state. It is also conceded that the provisions in the law that all producers are to receive the same price for milk produced, subject to reasonable differences for quality and location, and the provisions relating to pooling, authorize the board to average the values of milk handled by the dealers in the area on the basis of the price fixed by the board, and to arrive at and promulgate what is known as the "blended price" to be paid to all producers.

It is recognized, as pointed out in *Nebbia* v. *People of the State of New York* (1934), 291 U. S. 502, 517, 54 S. Ct. 505, 507, 78 L. Ed. 940, 945, 946, 89 A. L. R. 1469, 1472, that: "Surplus milk presents a serious problem, as the prices which can be realized for it for other uses are much less than those obtainable for milk sold for consumption in fluid form or as cream. A satisfactory stabilization of prices for fluid milk requires that the burden of surplus milk be shared equally by all producers and all distributors in the milk-shed." The right to fix prices that shall be paid to producers for the various grades of milk, based upon the purposes for which they are sold, is recognized. The order complained of provides for a tentative or "announced" blended price; that at the end of the period the total amount of milk of each class sold in the entire area be ascertained; and the total price which each distributor should have paid to the producer, upon the basis of the purposes for which his milk was resold, be determined; that, if he has paid more to the producer for his total purchases than the average price which he should have paid, upon the basis of disposition of the product, he shall be reimbursed out of the pool, and, if he has paid less to the producer, he shall pay the difference into the pool. Thus, if Dealer A purchased 100,000 pounds of milk from producers, 40,000 pounds of which were disposed of as class A milk, for which the fixed price to the producer

is $2 per hundred, and 60,000 pounds of which was surplus or class IV milk, the fixed price of which is $1.10 per hundred, the total which he should have paid to producers is $1,460. Under the announced "blended price," he paid $1.64 per hundred pounds for all of the milk purchased, or $1,640. Thus, he has overpaid the producers $180, and is entitled to be reimbursed by the producers. Dealer B purchased 100,000 pounds at $1.64 per hundred, or $1,640. Of this he disposed of 80,000 pounds of class I, for which the producers were entitled to $2 per hundred, and 20,000 pounds of surplus or class IV, for which the producers were entitled to $1.10 per hundred. For the total the producers were entitled to $1,820, but Dealer B has paid to the producers only $1,640. There is a balance due the producers of $180, which they are entitled to be paid. Thus, if Distributor B paid $180 to all of the producers in the area, and they turned over that $180 to Distributor A, the price would be effectively adjusted, and each distributor would have paid the price required by the board for each class of milk purchased by him. But distribution to all of the producers may be impracticable, if not impossible. Therefore the pool authorized by the law is set up and managed by the representatives of the Milk Control Board as a clearing house, and, through the pool, the balance due producers from Distributor B is paid directly to Distributor A, to whom the producers are indebted, and the same result is achieved.

The appellee distributors vigorously contend that these equalization payments merely take money from the more fortunate dairy, which disposes of its milk as class I milk, and has a little surplus, and gives it to the less fortunate dairy, which is able to market less class I milk, and, consequently, has a larger surplus; that it merely takes profits from one distributor and gives them to another. But, as we see it,

this is not the effect of the law. It does not take·profits from the distributor. It merely takes from him the difference between the amount he paid the producer and the amount which he should have paid the producer, as ultimately determined by his sales. The price that the distributor pays to the producer in the first instance is tentative only, subject to adjustment when the lawful price, determined by the class in which the milk is resold, is ascertained.

If the rules so operate that those who sell a greater portion ·of milk in the higher class, and pay a higher average price to the producer, are penalized for their initiative, and those who sell a higher portion ·of low-grade milk are benefited thereby, it is not because of the unconstitutionality ·of the statute, but because ·of an unreasonable price structure, which may be remèdied by the board, or upon appeal to the court as provided for in the act. See *Albert et al.* v. *Milk Control Board of Indiana, supra.*

The details of the method of operating the pool have not been ·considered. They are ·complicated, and involve adjustments to equalize differences between the tentative or announced "blended price" and the afterward determined "blended price." Delinquencies in payments of assessments to the pool also affect the "blended price," but there are compensating adjustments when the delinquencies are paid. There is some criticism of the method of arriving at prices for the lower grades of milk. If these methods are unlawful or unreasonable, the remedy is by action of the board and appeal to the courts. Whether a better method of administering the pool can be devised is not for the courts to determine. The method adopted accomplishes the legislative purpose with a sufficient degree of exactness to satisfy constitutional requirements.

Judgment reversed, with instructions to enter judgment for the defendants.

ON PETITION FOR REHEARING.

PER CURIAM—Since there is no controversy between the parties as to the facts involved, and no substantial controversy as to the legal principles involved, the only controversy being upon the question of whether the equalization fund takes profits from one distributor for the benefit of another, it was not thought necessary to consider the specific errors assigned, all of which are based upon the same contentions. But, since no good purpose would be served by re-forming issues, or a retrial, the mandate heretofore made is modified, and it is ordered that the conclusions of law be restated in conformity to this opinion, and that judgment be entered for the defendants.